*In re* JABER W. *et al.*, Minors, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee, v. Felicia W., Respondent-Appellant).

First District (6th Division)   No. 1—02—0064

Opinion filed October 17, 2003.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Nancy Grauer Kisicki, and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Kate B. Haarvei, of counsel), guardian *ad litem*.

JUSTICE TULLY delivered the opinion of the court:

Felicia W. appeals from orders of the circuit court of Cook County that found her three minor children to be neglected due to an injurious environment and abused due to a substantial risk of injury under sections 2—3(1)(b) and 2—3(2)(ii) of the Juvenile Court Act of 1987 (705 ILCS 405/2—3(1)(b), (2)(ii) (West 2000)).

Felicia W. gave birth to Jaber W.[1] on February 15, 1993. Michael W., Jr., was born on April 20, 1995, and Derrick W. was born on May 22, 1999[2] . Felicia W. and Michael W., Sr., have one other child in DCFS custody with findings of abuse and/or neglect having been entered. In March 2001, the three boys lived with their mother, Felicia, and Michael Sr.

On March 26, 2001, the State filed petitions for adjudication of wardship and motions for temporary custody regarding Jaber, Michael Jr. and Derrick. On March 29, 2001, following a temporary custody hearing, the trial court found probable cause that all three children had been abused or neglected and found urgent and immediate necessity to remove them from the custody of Felicia and Michael Sr. pending the adjudicatory hearing.

The trial court conducted the adjudicatory hearing on June 15, 2001, and August 6, 2001. The State entered the certified adjudication and dispositional orders for the other child of Felicia and Michael Sr., Marquita W., into evidence. This evidence showed that on November 11, 2000, the trial court found that Marquita W. was neglected due to a lack of care. The court, in its findings of fact in that case, stated that a Cook County Hospital doctor testified that the parents delayed in seeking medical attention for the child and that due to that delay, Marquita was near her death. On February 6, 2001, the trial court appointed DCFS as Marquita's guardian after finding that Felicia and Michael Sr. were unable to care for, protect, train or discipline the child.

The first witness to testify in the June 15, 2001, adjudicatory

---

[1]Jaber's father, Quincy Jones, was noncustodial at all times relevant to the proceedings. He is not a party to this appeal.

[2]Michael W., Sr., is the father of both Michael W., Jr., and Derrick W. He did not appeal the trial court's order and is not a party to this appeal.

hearing was DCFS investigator Brigitte Broadway. She was assigned to investigate a hot-line report regarding Jaber, Michael Jr. and Derrick. Ms. Broadway testified that the hot-line report alleged that the children were residing with Felicia and that they were not being fed. The report further alleged that one of the children had a mark underneath his eye which he stated he received from Michael Sr. The report claimed that Felicia was giving her public aid money to Michael Sr. to buy a car. Felicia objected to this testimony as narrative; however, the trial court overruled the objection.

Ms. Broadway testified that on March 15, 2001, she went to Jaber's elementary school to interview him. Ms. Broadway and Jaber spoke alone in a counselor's office. Jaber was wearing dirty pants and his hair was not combed. Jaber had a mark underneath his left eye and a scratch on his face. Ms. Broadway completed a body chart for Jaber documenting a scratch on Jaber's right cheek, an abrasion on the left cheek, and a rash on the right side below the waist. When questioned about the mark under his eye, Jaber told Ms. Broadway that his dad hit him with his hand. Ms. Broadway explained that when Jaber talks about his father, he is referring to Michael W., Sr. Jaber also said that when his dad gets angry, his dad yells and screams at Jaber and his brothers and his mother. Jaber stated that he is sometimes afraid of his father.

Also on March 15, 2001, Ms. Broadway attempted to interview Felicia and Michael Sr. in their home. Ms. Broadway testified that Michael Sr. told her that DCFS had already taken one of his children and it was not going to take another. Michael Sr. used profanity and told Ms. Broadway to get out of his house. Ms. Broadway spoke to Felicia in the hallway outside the apartment. Felicia told Ms. Broadway that Jaber had been injured at his cousin's house and that she and Michael Sr. loved their kids.

On March 22, 2001, Ms. Broadway interviewed Jaber again in response to a second hot-line call in which it was alleged that Jaber had a new bruise on his face. On March 22, Jaber was wearing the same clothes he had worn on March 15 and he had a foul odor. Ms. Broadway saw a new bruise on Jaber's face, and when she asked him about it, Jaber told her that he got the bruise when he slipped on some ice on the playground. Ms. Broadway was not satisfied with this explanation as there was no ice on the playground. She asked Jaber again how he got the bruise and he told her that he got the bruise in his dad's van. Jaber explained that he was riding in the van and was not wearing a seat belt, and when his father turned the corner quickly, he slipped and fell on a wrench. Ms. Broadway asked Jaber whether he was telling the truth and Jaber did not answer. Ms. Broadway then

asked Jaber why he had told her that he slipped on ice at the playground and Jaber responded that his mother told him to say he had fallen on the playground. Ms. Broadway then told Jaber that it was her job to make him feel safe in his home and that she needed him to tell the truth. She asked again how he got the bruise on his face and Jaber said he was in his dad's van and he fell on a wrench.

Ms. Broadway testified that throughout the March 22, 2001, interview, Jaber made no eye contact with her; he kept his head down and was shifting in his chair. Ms. Broadway concluded that Jaber was afraid. Following the March 22, 2001, interview, Ms. Broadway took protective custody of Jaber, Michael Jr. and Derrick.

Later in the day on March 22, Ms. Broadway had a second interview with Jaber at the DCFS office. Again, she asked Jaber what happened to his face. Jaber first told her that he fell on the playground. He then told her that he fell in his dad's van. Jaber then told her that his dad hit him. Ms. Broadway asked Jaber which was the right answer, and Jaber said that his dad hit him in the face with his hand. On March 23, 2001, DCFS had Jaber examined at Saint Anthony Hospital.

The adjudication hearing continued on August 6, 2001, with guardian *ad litem* witness Marcy Ring, Jaber's first-grade teacher. Ms. Ring testified that on March 15, 2001, she had a conversation with Jaber. Ms. Ring explained that Jaber had been with DCFS workers all day and that he was very quiet. Ms. Ring approached Jaber and said "tough day Jaber." Jaber began to cry so Ms. Ring took him into the hallway so that he could calm down. Ms. Ring testified that Jaber told her that the DCFS caseworker wanted to know about his home life and whether his dad hit him. Jaber told Ms. Ring that when his dad gets angry he will punish Jaber by sending him to his room, or if he is not cleaning his room or doing his homework, he will be hit. Jaber said that his dad hits him with his hand or a belt and sometimes Jaber cannot remember why he was hit. Jaber told Ms. Ring that his mom cannot help because when his dad is angry he also yells at his mom.

Ms. Ring testified that on March 20, 2001, Jaber was absent from school. When Jaber returned to the school the following day, he had a bruise on the left side of his face. This bruise was swollen and red and went from the top of Jaber's forehead to his cheek. Jaber told Ms. Ring that he fell in his dad's van and hit a wrench. Ms. Ring showed Jaber a picture of a wrench but Jaber said that was not what he fell on. Ms. Ring asked Jaber to draw a picture of what he fell on but she did not recognize the object Jaber drew.

Ms. Ring stated that after talking to Jaber on March 21, 2001, she suspected he was being abused. Ms. Ring testified that she based her

suspicion on three factors: (1) Jaber had told her the previous week that he sometimes did not know why his dad hit him; (2) Felicia came to the school the previous week; and (3) Jaber's explanation regarding the bruise on his face was not plausible. Ms. Ring further testified that as a mandated reporter she was required to report any suspected abuse. Ms. Ring discussed her suspicion with the principal and they decided that they needed to call the DCFS hot line.

Michael Sr. testified next on his own behalf. He stated that he is not Jaber's natural father but that Jaber lived with him. Michael Sr. testified that he never hit Jaber and that he does not "whoop" his kids. Michael Sr. stated that Jaber received the bruise on the left side of his face when he fell on a pulley wrench in the van.

Next, the respondent called Brigitte Broadway to testify again on behalf of the respondent. Respondent's attorney asked Ms. Broadway whether she received a hot-line telephone call in this matter and the nature of the call that she received. Ms. Broadway stated that she received a report regarding Jaber, Michael Jr. and Derrick. Respondent's attorney then asked Ms. Broadway whether she recalled the allegations of the hot-line report. Ms. Broadway stated that she could not recall. Ms. Broadway also stated that when she went to Felicia's home on March 15, 2001, the home had running water and electricity. There was food in the refrigerator and in the cupboards. She saw Derrick sitting on a training toilet wearing no clothes and she did not notice any marks on Derrick.

Lastly, respondent's attorney entered into evidence Jaber's medical records from Saint Anthony Hospital. Respondent's attorney published from the records that on March 23, 2001, Jaber received a diagnosis of eczema and the doctor noted dry skin from scratching and scars from scabbing. Respondent failed to include copies of these hospital records in the record on appeal.

On August 6, 2001, the court found that Jaber, Michael Jr., and Derrick were neglected due to an injurious environment and abused due to a substantial risk of injury under sections 2—3(1)(b) and 2—3(2)(ii) of the Juvenile Court Act of 1987 (705 ILCS 405/2—3(1)(b), (2)(ii) (West 2000)). The court stated that the evidence regarding the bruise noticed by Jaber's teacher on March 21, 2001, was contradictory at best. The court noted that the teacher described the bruise as almost the entire length of Jaber's face. However, the doctor's report for an exam conducted on March 23, 2001, failed to note anything regarding bruising. Thus, the trial court stated that it gave little, if any, weight to the evidence regarding the March 21 allegations.

The court went on to state that the DCFS investigator viewed marks on Jaber's face and also noted that Jaber told her that his

"dad" hit him with his hand. The court also noted that Jaber told the DCFS worker that he is afraid of Michael Sr. The trial court explained that no child should have to be fearful of any adult who is residing with him and that it is the responsibility of the mother to insure that the child is not in a fearful environment.

On November 20, 2001, the juvenile court held a disposition hearing regarding Jaber, Michael Jr., and Derrick. The court concluded that it was in the children's best interest, health, safety and welfare to make them wards of the court. No issues regarding the disposition hearing have been raised in this appeal.

■ On appeal, respondent first contends that the juvenile court made three evidentiary errors. Respondent asserts that the court erred by allowing into evidence the contents of a hot-line call. Respondent argues that Brigitte Broadway testified directly about the contents of the hot-line call and contends that this testimony exceeded the bounds necessary to explain the course of the DCFS investigation. Ms. Broadway did testify as to the contents of the March 14, 2001, hot-line call when she first testified on June 15, 2001. Respondent objected to the testimony, asserting it was "narrative." At no time did the respondent object to the testimony based on hearsay. Thus, any objection to the evidence based on hearsay is waived. See, *e.g.*, *Jones v. Chicago Osteopathic Hospital.*, 316 Ill. App. 3d 1121, 1132, 738 N.E.2d 542 (2000) (objection not offered in the trial court is waived); *Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1079, 631 N.E.2d 1246 (1994) (to preserve an objection for appeal, party must not only object but state the proper basis for the objection in the trial court). Moreover, the respondent called Ms. Broadway to testify again on August 6, 2001, and questioned Ms. Broadway about the content of the same hot-line call. Respondent specifically asked Ms. Broadway what was the nature of the hot-line call and went on to ask whether she recalled the allegations of the call. We find that respondent waived any objection to this testimony by failing to make a proper objection in the trial court. Further, considering the respondent sought to offer the same testimony in her case in chief, we fail to see how the testimony could have been prejudicial.

■ Respondent next asserts that hearsay about what Jaber told the DCFS worker was not admissible. Marcy Ring testified that she questioned Jaber about what he told the DCFS workers. She related what Jaber told her he had told the DCFS workers. However, respondent failed to object to this testimony at trial and thus waived this argument on appeal. See *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d at 1132.

■ The third evidentiary error claimed by respondent is the admis-

sion of Marcy Ring's testimony about a conversation between Felicia and the school principal. During the hearing, Ms. Ring testified regarding a conversation between Felicia and the school principal. Respondent objected to the testimony and the trial court struck all of the testimony regarding the conversation. Later, Ms. Ring was asked why she believed Jaber was being abused and she testified that she based her belief on three factors. Ms. Ring testified that one of those factors was, "Ms. [W] coming up to school ***." The respondent objected to the testimony as hearsay.

We find that the court properly admitted the testimony because it was not offered for the truth of the matter asserted. The testimony was not offered as proof of a conversation between Felicia and the principal. Rather, the testimony was offered to explain why Ms. Ring believed Jaber might be abused. The court earlier struck Ms. Ring's testimony about the content of a conversation between Felicia and the principal. The testimony that there was a conversation was only allowed when it was offered for the basis for Ms. Ring's suspicions of abuse. Thus, we find no error.

■ The respondent next asserts that the trial court improperly barred her from inquiring into Brigitte Broadway's mental health or medical condition. Respondent claims that the mental health of a witness is relevant to his or her credibility and is a permissible area of impeachment. Here, during cross-examination of Ms. Broadway, respondent asked whether she was "taking any medication" and whether she was "presently under any medical care." The State objected to both questions based on relevance and the court sustained both objections. Thereafter, respondent made no attempt to show that Ms. Broadway was in fact taking medication or under medical care.

In order to preserve for review the question of whether evidence was improperly excluded, an offer of proof as to what that testimony would be is necessary. *Tarshes v. Lake Shore Harley Davidson*, 171 Ill. App. 3d 143, 149, 524 N.E.2d 1136 (1988). Here, respondent failed to make an offer of proof as to what the testimony would have shown had it been allowed. Moreover, the respondent failed to make an offer of proof that Ms. Broadway's investigation would have been affected if she were on medication or under the care of a physician. Further, the respondent failed to establish why the evidence was relevant to the credibility of the witness. For all of these reasons, we cannot find that the trial court abused its discretion in barring the testimony.

Finally, the respondent contends that the trial court's August 6, 2001, finding was against the manifest weight of the evidence. Respondent asserts that the court based its finding on uncorroborated, out-of-court statements made by Jaber. Respondent claims that there

was no independent evidence that would have made Jaber's hearsay statements to the DCFS worker or to his teacher more probable. Respondent points out that Jaber made inconsistent statements about whether any abuse or neglect occurred. Further, respondent notes that the State did not present any medical evidence to corroborate the allegations that Jaber was hit by Michael Sr. instead of sustaining a bruise from an accident.

■ On appeal, a reviewing court will not disturb a trial court's finding that a child was abused or neglected unless its findings of fact are contrary to the manifest weight of the evidence. *In re M.Z.*, 294 Ill. App. 3d 581, 592, 691 N.E.2d 35 (1998). A finding of the trial court is against the manifest weight of the evidence only if a review of the record clearly demonstrates the opposite result was the proper one. *In re K.G.*, 288 Ill. App. 3d 728, 735, 682 N.E.2d 95 (1997). The trial court is in the best position to determine the credibility and weight of the witnesses' testimony as it has the best opportunity to observe the demeanor and conduct of the parties and witnesses. *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.2d 422 (2001). Thus the trial court is afforded broad discretion when determining the existence of abuse. *In re C.C.*, 224 Ill. App. 3d 207, 215, 586 N.E.2d 498 (1991).

■ Here, we find there was sufficient evidence to corroborate Jaber's out-of-court statements. Both DCFS caseworker Brigitte Broadway and Jaber's teacher Marcy Ring testified that Jaber told them Michael Sr. sometimes hits him with his hand and that Jaber does not always know why he is hit. The statements are corroborated by the evidence that both witnesses observed bruises and a scratch on Jaber's face. The statements are also corroborated by the testimony about Jaber's demeanor. Ms. Ring testified that after speaking with the DCFS workers, Jaber was very quiet, and when Ms. Ring addressed Jaber, he began to cry. Ms. Broadway stated that when she questioned Jaber about his bruises, he would not look at her and he was shifting in his chair.

Further, the court's finding is supported by Ms. Broadway's observations of Jaber's appearance. Ms. Broadway testified that during her interview with Jaber, he was wearing dirty clothes and his hair was uncombed. When Ms. Broadway interviewed Jaber a week later, he was wearing the same dirty clothes and he had a foul odor. Ms. Broadway also testified that when she went to respondent's home, she observed Derrick sitting naked in front of the television on a training toilet eating cereal.

Moreover, the trial court's finding is supported by the evidence that approximately four months prior, Marquita W., another child who had been in respondent's care, had been found to be neglected by

respondent. Under the Juvenile Court Act of 1987, proof that one minor is neglected, abused, or dependent is admissible evidence on the issue of neglect, abuse, or dependency of any other minor for whom the parent is responsible. 705 ILCS 405/2—18(3) (West 2000). A parent's behavior toward one minor may be considered when deciding whether a sibling is exposed to an injurious environment. *In re M.D.H.*, 297 Ill. App. 3d 181, 188-89, 697 N.E.2d 417 (1998). With respect to Marquita, the trial court found that respondent was unable to care for, protect, train, and discipline Marquita. In that case, the court found that Marquita was near death because respondent failed to obtain medical assistance. This evidence supports the trial court's finding here that Jaber, Michael Jr., and Derrick were neglected and abused.

Accordingly, we find that the trial court's finding of neglect due to an injurious environment and abuse due to a substantial risk/physical injury is not against the manifest weight of the evidence.

For the foregoing reasons, we affirm the finding and order of the juvenile court.

Affirmed.

O'MARA FROSSARD, P.J., and O'BRIEN, J., concur.