Fourth Division
September 21, 2006

No. 1-03-2835

| | | |
|---|---|---|
| *In re* L.W., | ) | Appeal from the |
| Minor-Respondent | ) | Circuit Court of |
| | ) | Cook County |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 96 JA 5810 |
| | ) | |
| v. | ) | |
| | ) | |
| Oscar H., | ) | Honorable |
| | ) | Sybil Thomas, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the modified opinion of the court:

The People of the State of Illinois (State) commenced this case by filing a petition for adjudication of wardship against Sandra W., the mother of L.W., the minor who is the subject of these proceedings. Subsequently, the complaint was amended naming Oscar H., L.W.'s father, as a respondent. The trial court entered an order terminating Sandra W.'s and Oscar H.'s parental rights to L.W. In this appeal, Oscar H. appeals from the order terminating his parental rights and the Public Guardian files a cross-appeal from the trial court's finding *that the State failed to prove that Oscar H. and Sandra W.[1] violated section 1 D b of the Adoption Act. 750 ILCS 50 1 D b West*

---

[1]Sandra W.'s case was affirmed on appeal in a <u>Finley</u> order on November 4, 2004.

<u>Pennsylvania v. Finley</u>, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987).

*1996.*

*On December 23, 2005, we entered an order reversing and remanding with directions the trial court s order terminating Oscar H. s parental rights. On March 29, 2006, the Illinois Supreme Court entered a supervisory order in which we were ordered to vacate our judgment in In re Oscar H. same as In re L.W., 218 Ill. 2d 540 2006 and reconsider this case in light of In re Arthur H., 212 Ill. 2d 441 2004. In re L.W., 218 Ill. 2d 540 2006. After vacating our judgment and reconsidering this case in light of In re Arthur H., we reverse the trial court s order.*

STATEMENT OF FACTS

L.W. was born October 21, 1996, and Sandra W. is L.W.'s biological mother. Immediately after her birth, L.W. tested positive for cocaine and a sexually transmitted disease. In addition, L.W. has a seizure disorder, asthma, and is "mentally retarded." On November 6, 1996, while in the custody of her mother, L.W. was taken into custody by the Department of Children and Family Services (DCFS).

On November 8, 1996, the State filed a petition for adjudication of wardship against Sandra W. The original petition for adjudication of wardship listed L.W.'s father as "unknown." A temporary custody hearing was held and the trial court found probable cause that L.W. was abused or neglected, and that it was a matter of immediate and urgent necessity to remove her from Sandra W.'s care pending an adjudicatory hearing. The court entered a temporary custody order that granted temporary custody of L.W. to the guardianship administrator of DCFS.

On January 7, 1997, Oscar H. appeared in court and the trial court entered an order finding that Oscar H. had admitted in open court that he was L.W.'s biological father. All the parties stipulated that Oscar H., a 67-year-old man, was a noncustodial parent at the time of L.W.'s birth. The trial court appointed the Public Defender of Cook County (Public Defender) to represent Oscar

H. On February 25, 1997, the petition for adjudication of wardship was amended to name Oscar H. as L.W.'s father.

On February 25, 1997, at an adjudicatory hearing, Sandra W. and Oscar H. stipulated to the following facts: (1) that on October 21, 1996, L.W. was born at 34 weeks gestation; (2) that Sandra W. told Judith Kilpatrick, a social worker with the Cook County Hospital, that she had used cocaine three weeks prior to L.W.'s birth and that she wished to give up custody of L.W.; (3) that at the time of L.W.'s birth, Sandra W.'s eight other children were in DCFS custody and she had not completed any drug treatment services; and (4) that Oscar H. was a noncustodial parent at the time of L.W.'s birth. Following the adjudicatory hearing, the trial court entered an adjudication order finding that L.W. was abused in violation of section 2-3(2)(ii) (substantial risk/physical injury) of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/2-3(2)(ii) (West 1996).

On April 29, 1997, following a dispositional hearing, the trial court entered a disposition order that found Oscar H. and Sandra W. were "unable for some reason other than financial circumstances alone to care for, protect, train or discipline" L.W. L.W. was placed in the custody of the guardianship administrator of DCFS. The trial court also entered an order of protection allowing Oscar H. unsupervised day visits with L.W., but the order did not permit unsupervised contact between L.W. and Sandra W.

On May 13, 1997, Oscar H. filed an emergency motion that asked the court to vacate the previously entered placement orders and requested that L.W. be placed in his custody. Oscar H. argued that he was fit, willing, and able to care for L.W., and that it was in the best interest of L.W. to be returned to her father. On June 9, 1997, a hearing was held on Oscar H.'s emergency motion,

and Oscar H. appeared at the hearing, but Sandra W. was not present. The court entered an agreed permanency order establishing a goal of returning L.W. home to Oscar H. within 12 months. The order stated that Oscar H.'s unsupervised visits were going well, that he had been steadily employed for 22 years, and that he was cooperating.

The record establishes that from 1998 to 2001, four permanency hearings were held. At each permanency hearing, the trial court entered a permanency order maintaining the goal of returning L.W. home to Oscar H. The record also contains DCFS service plans for L.W. that contain information about her siblings. The DCFS client service plans in the record that provide the names and some case numbers for L.W.'s siblings are as follows: (1) the November 27, 2000, service plan for L.W. (96JA5810) and S.H. (98JA346); (2) the May 18, 2001,  service plan for L.W.; (3) the November 19, 2001, service plan for L.W.; (4) the May 14, 2002, service plan for L.W.; and (5) the November 26, 2002, service plan for L.W  The aforementioned service plans also provide the birth dates and medical backgrounds for L.W. and her siblings: (1) that O.W.  was born on July 24, 1993; J.W. was born March 12, 1995; L.W. was born on October 21, 1996; T.H. was born on January 22, 1998; and S.H. was born on May 20, 1999; (2) that O.W. and J.W. both tested positive for syphilis at birth, like L.W., and were placed in temporary custody; (3) that T.H. was born premature and exposed to cocaine, like L.W., and was placed in temporary custody; and (4) that S.H. was born drug exposed and placed in temporary custody. The  May 1, 2000, Catholic Charities reunification services progress report provides the dates that Oscar H. was given custody of L.W.'s siblings by the juvenile court: (1) Oscar H. obtained custody of O.W. and J.H. on August 7, 1998; and (2) Oscar H. obtained custody of T.H. on February 25, 2000.  Finally, a May 18, 2001, service plan indicates that

Oscar H. obtained custody of S.H. on April 23, 2001.

On February 19, 2002, following a permanency hearing, the hearing officer recommended a goal of substitute care pending court determination on the State's petition to terminate parental rights. On March 15, 2002, Oscar H. filed an objection to the hearing officer's February 19, 2002, permanency recommendation goal of terminating his parental rights. Oscar H. argued that the goal should be to return L.W. home within five months because her siblings resided with him; he had proven his ability to care for L.W. and her siblings; and it would be in L.W.'s best interest to be returned to her father.

On April 19, 2002, the court entered a proposed permanency order establishing a goal of private guardianship. The court provided the following reasons for selecting the goal of private guardianship and for rejecting the goal of returning L.W. home: (1) that L.W. had been in foster care for five years; (2) that Sandra W. was not working toward reunification; (3) that Oscar H. had not made reasonable progress toward reunification; and (4) that the foster parent would like to become L.W.'s private guardian and would allow continued contact with L.W.'s biological family. The court entered an order with a goal of private guardianship.

On June 3, 2002, the Public Guardian filed a motion to approve L.W.'s out-of-state placement in Kansas with her foster parent. On July 10, 2002, the trial court granted the motion and entered an order allowing L.W.'s foster parent to move her out of state to Kansas.

On December 6, 2002, following a permanency hearing, at which both parents were present, the trial court entered a "proposed" permanency order which established a goal of substitute care pending court determination of the State's petition for termination of parental rights. The order stated

that Oscar H. and Sandra W. had not made substantial reunification with L.W. and that her foster parent would like to be her private guardian. The order stated that L.W.'s foster parent would allow continued contact with her biological family. In conjunction with the hearing, the Public Guardian filed a staffing summary from Melissa Frank, a clinical placement reviewer in DCFS's HELP unit. Frank stated in her summary that private guardianship was not an appropriate goal for L.W. because she would not be  eligible for a subsidy through DCFS to address her medical needs; therefore, it was in L.W.'s best interest to be adopted by her foster parent.

On March 3, 2003, the State filed a supplemental petition for appointment of a guardian with the right to consent to adoption (supplemental adoption petition). The supplemental adoption petition alleged that Oscar H. and Sandra W. were unfit parents and that Sandra W. and Oscar H. violated two of the same sections of the Act and that Sandra W. also violated two additional sections of the Act.[2] Specifically, the petition alleged that Oscar H.: (1)"failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's (L.W.'s) welfare, in violation of 750 ILCS 50/1(D)(b) and 705 ILCS 405/2-29"; and (2) failed to "make reasonable

---

[2]There were two unfitness allegations in the petition that only applied to Sandra W.: (1) that "[s]he has failed to protect the child from conditions in the child's environment injurious to the child's welfare, in violation of 750 ILCS 50/1 D(g) and 705 ILCS 405/2-29"; and (2) that "[s]he has been an habitual drunkard and/or addicted to drugs other than those prescribed by a physician, for at least one year immediately prior to the *** proceeding, in violation of 750 ILCS 50/1 D(k) and 705 ILCS 405/2-29."

efforts to correct the conditions which were the basis for the removal of the child from them and/or have failed to make reasonable progress toward the return home of the child to them within 9 months after the adjudication of neglect or abuse *** or after an adjudication of dependency *** and/or within any 9 month period after said finding *** in violation of 750 ILCS 50/1(D)(m) and 705 ILCS 405/2-29."

On August 15, 2003, a termination of parental rights hearing was held. Prior to the commencement of the hearing, the Public Guardian made an oral motion in limine to exclude evidence concerning the "dispositions" entered at the conclusion of Oscar H.'s parental fitness hearing for L.W.'s siblings. The Public Guardian cited In re M.C., 201 Ill. App. 3d 792 (1990), as authority for his position. Oscar H. objected arguing that the court should hear evidence concerning his care of L.W.'s siblings because it was relevant to show his fitness as a parent. During the hearing, the State withdrew its counts based on sections 1(D)(g) ("[f]ailure to protect the child from conditions within his environment injurious to the child's welfare") and 1(D)(k) ("[h]abitual drunkenness or addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding") of the Adoption Act from its supplemental petition, and proceeded on the counts based on sections 1(D)(b) and 1(D)(m) of the Adoption Act. 750 ILCS 50/ 1(D)(b), (D)(g), (D)(k), (D)(m) (West 1996). Finally, the trial court continued the hearing until August 19, 2003, for a ruling on the Public Guardian's oral motion in limine.

On August 19, 2003, at the continuation of the termination of parental rights hearing, Oscar H. argued that the facts in In re M.C. were distinguishable and its holding inapplicable because in

L.W.'s case, he had already successfully demonstrated his fitness as a parent for her siblings. Oscar H. also argued that if "bad evidence" regarding other children was admissible at a termination of parental rights hearing, then "good evidence" should also be admissible regarding the parent and other children.

The trial court, before ruling on the motion, made the following statement:

"What we are talking about is [L.W.] and talking only about [L.W.] in this case. We are not talking about the other children home with Mr. [H.] and his fitness as to those children. Each case stands on its own, and each one is an individual case. [L.W.] is her own case."

The trial court then granted the Public Guardian's motion in limine holding:

"[E]vidence of Mr. [H.]'s or evidence of his fitness as to other children, I am going to exclude that, that evidence, because we are going to deal specifically with [L.W.]."

Bifurcated hearings were held regarding the issues of unfitness and the best interest of the child. The termination of parental rights hearing proceeded in two parts: first, a determination of Oscar H.'s and Sandra W.'s fitness to be parents based on sections 1(D)(b) and 1(D)(m) of the Adoption Act; and second, a determination of the best interests of L.W. During the fitness portion of the proceedings, the State called Mary Henderson, a case supervisor with Catholic Charities, as its only witness. At the conclusion of the fitness portion of the proceedings, the trial court found that the State failed to prove by clear and convincing evidence that Oscar H. or Sandra W. had not maintained a reasonable degree of interest, concern, or responsibility toward L.W.'s welfare under

section 1(D)(b) of the Adoption Act. However, the trial court found that Oscar H. and Sandra W. were unfit under section 1(D)(m) of the Adoption Act by clear and convincing evidence because both parents failed to make reasonable efforts to correct the conditions that necessitated L.W.'s removal. On August 20, 2003, following a best-interest-of-the-child hearing, the parental rights of Oscar H. and Sandra W. were terminated. On September 18, 2003, Oscar H. filed his notice of appeal in case No. 1-03-2835 and presents two issues for our review: (1) whether the trial court erred when it granted a motion in limine and excluded evidence of L.W.'s siblings' dispositions; and (2) whether the trial court's finding of parental unfitness was against the manifest weight of the evidence in light of the fact that Oscar H. was found fit to care for four of L.W.'s siblings, some of whom suffer from the same or similar medical problems as L.W. On September 24, 2003, the Public Guardian filed a notice of cross-appeal, and presents the following issue for our review: whether the trial court erred in failing to find Oscar H. and Sandra W. unfit under section 1(D)(b) of the Adoption Act.

## ANALYSIS

### THE UNFITNESS FINDINGS

We note that in the supplemental adoption petition Oscar H. and Sandra W. were initially charged with being unfit pursuant to four sections of the Adoption Act I D b, I D g, I D k and I D m. 750 ILCS 50 I(D)(b), (D)(g), (D)(k), (D)(m) West 1996. We also note that the State dismissed its unfitness counts predicated on sections I D g and I D k of the Adoption Act. 750 ILCS 50 I D g, D k West 1996. In order to find that a parent is unfit under section I D b of the Adoption Act 750 ILCS 50 I D b West 1996, the trial court must find by clear and

convincing evidence that the parent failed to maintain a reasonable degree of interest, concern, or responsibility as to the child s welfare. In re Adoption of Syck, 138 Ill. 2d 255, 273-74 1990 see In re Paul, 101 Ill. 2d 345, 352 1984 , citing In re Brown, 86 Ill. 2d 147, 152 1981 . We note with special interest that the trial court found that the State failed to prove that Oscar H. violated section 1 D b of the Adoption Act. 750 ILCS 50 1 D b West 1996 . Therefore, the trial court determined that Oscar H. maintained a reasonable degree of interest and concern for L.W.

In order to find that a parent is unfit under section 1 D m of the Adoption Act, the trial court must find clear and convincing evidence that the parent failed to make reasonable progress toward the return home of his or her child. In re H.C., 305 Ill. App. 3d 869, 874 1999 750 ILCS 50 1 D m West 1996 . Reasonable progress exists when a parent shows a minimum measurable or demonstrable movement toward the return of his or her child and a court should not make a finding of reasonable progress unless the evidence shows the parent s conduct is improving and will soon comply with the ordered directives. In re H.C., 305 Ill. App. 3d at 875. During the fitness hearing, it is the parent s past conduct in the then-existing circumstances that is under scrutiny. Paul, 101 Ill. 2d at 352-53.

Under section 1(D)(m) of the Adoption Act, the failure of a parent to make reasonable progress toward the return of the child to the parent within nine months after an adjudication that the minor is neglected or abused under section 2-3 of the Juvenile Court Act of 1987 is grounds for the court to find that person unfit to have a child. 750 ILCS 50/1(D)(m) (West 1996). Section 2-3(2)(ii) of the Act, the section allegedly violated by Oscar H., provides that an abused minor includes any minor under 18 years of age whose parent creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of

emotional health, or loss or impairment of any bodily function. 705 ILCS 405/2-3(2)(ii) (West 1996).  According to section 2-21(1) of the Act, the section under which abuse or neglect is determined, if the court finds that the minor is abused, neglected or dependent, the court shall then: (1) determine and put in writing the factual basis supporting its determination that the abuse, neglect or dependency is the result of physical abuse to the minor inflicted by the parent;  and (2) include the findings in the order of the court. 705 ILCS 405/2-21(1) (West 1996).[3]

### THE TEMPORARY CUSTODY PROCEEDINGS

In order to address the issue presented in this case, we must examine the procedural history. The record establishes that when L.W. was taken into custody on November 6, 1996, she was in the sole custody of her mother.  The record also establishes that when a temporary custody hearing was held on November 8, 1996, the trial court found probable cause that L.W. was abused or neglected. In the November 8, 1996, temporary custody order, the trial court found that it was a matter of immediate and urgent necessity to remove L.W. from Sandra W.'s care pending an adjudicatory hearing.  The temporary custody order only applied to Sandra W. because Oscar H. had not been

---

[3]Currently under section 2-21(1) of the Act, the court must state the factual basis for its determination and specify, to the extent possible, both the acts or omissions of each parent that form the basis of the court's findings.

named as a party to the proceedings.

## THE ADJUDICATION OF WARDSHIP PROCEEDINGS

The February 25, 1997, petition for adjudication of wardship initially named Sandra W. as L.W.'s parent and stated that L.W. was neglected because Sandra W. created an injurious environment based upon the following: (1) her whereabouts were then unknown; (2) she admitted to a DCFS investigator that she used cocaine three weeks prior to L.W.'s birth; and (3) she failed to comply with the services offered by a private agency follow-up worker. 705 ILCS 405/2-3(1)(b) (West 1996). The petition for adjudication of wardship also stated that L.W. was neglected because Sandra W. posed a threat of "substantial risk/physical injury" because: (1) she had a history of inadequate supervision of L.W.'s siblings; and (2) L.W.'s minor siblings were sexually molested and one sibling sustained a fractured arm due to physical abuse. 705 ILCS 405/2-3(2)(ii) (West 1996).

On February 25, 1997, the trial court entered an order to amend the identifying information on the petition for adjudication of wardship and Oscar H.'s name was added to the petition. After the amendment adding Oscar H.'s name, the petition for adjudication of wardship was still predicated exclusively on the acts of physical abuse or neglect of Sandra W. Nowhere in the petition for adjudication of wardship does it mention an act of physical abuse inflicted by Oscar H. that caused L.W. to be abused, neglected or dependent. Therefore, the petition for adjudication of wardship was not directed against Oscar H., and we cannot infer joint responsibility for neglect since both parents did not reside with the child.

### A. The Proceedings Pursuant to Section 2-21(1) of the Act

At the adjudicatory hearing, Oscar H. stipulated to the fact that he was a noncustodial parent

at the time of L.W.'s birth. Following the adjudicatory hearing, the trial court entered an adjudication order finding that L.W. was abused in violation of section 2-3(2)(ii) (substantial risk/physical injury) of the Act. 705 ILCS 405/2-3(2)(ii) (West 1996). The legislature prescribed the procedure that a circuit court must follow when conducting an adjudicatory hearing in section 2-21(1) of the Act. 705 ILCS 405/2-21(1)(West 1996).

Section 2-21(1) of the Act provides as follows:

"After hearing the evidence the court shall determine whether or not the minor is abused, neglected, or dependent. *** The court's determination of whether the minor is abused, neglected, or dependent shall be stated in writing with the factual basis supporting that determination.

If the court finds that the minor is abused, neglected, or dependent, the court shall then determine and put in writing the factual basis supporting that determination of whether the abuse, neglect, or dependency is the result of physical abuse to the minor inflicted by a parent, guardian, or legal custodian. That finding shall appear in the order of the court." 705 ILCS 405/2-21(1) (West 1996).

Thus, section 2-21(1) of the Act requires a two-step process. First, the circuit court must determine whether the minor is neglected. In re Arthur H., 212 Ill. 2d 441, 466 (2004). In determining whether the minor is neglected, there is no direction from the legislature that the court shall consider the actions of the parents in making this determination. In re Arthur H., 212 Ill. 2d at 466. Second,

after the circuit court has adjudicated the child neglected, the court must consider the actions of the parents. In re Arthur H., 212 Ill. 2d at 466.

Our review of the adjudication order in this case indicates that the trial court determined that L.W., the minor, was "abused or neglected." The adjudication order specifically provides that L.W. was "abused or neglected as defined in 405/2-3 of the Juvenile Court Act in that conduct toward the minor violates:
*** 405/2-3(2)(ii) substantial risk/physical injury." In this case, by finding that L.W. was abused or neglected, the circuit court complied, in part, with the first step of section 2-21(1)'s two-step process. While the court found L.W. abused or neglected, the court failed to provide the factual basis for the court's determination that L.W. was abused or neglected as required by section 2-21(1). 705 ILCS 405/2-21(1) (West 1996); see also In re Arthur H., 212 Ill. 2d at 466. Therefore, the court did not fully comply with the first step of the two-step process.

Next, after the circuit court adjudicates the child abused or neglected, it must determine whether the circuit court complied with the second step of section 2-21(1)'s two-step process and considered the actions of the parents. See In re Arthur H., 212 Ill. 2d at 466. Section 2-21(1) provides that if the court finds that the minor is neglected, the court shall then determine and put in writing the *factual basis* supporting the determination of whether the abuse or neglect is the result of physical abuse to the minor inflicted by one of her parents. See 705 ILCS 405/2-21(1) (West 1996); In re Arthur H., 212 Ill. 2d at 466. We must determine whether the circuit court's order provided the factual basis supporting its determination that L.W. was abused or neglected as a result of physical abuse to the minor inflicted by one or both parents. See 705 ILCS 405/2-21(1) (West 1996). Our

˘14˘

review of the adjudication order also reveals that the circuit court's order failed to provide a factual basis supporting its determination that L.W.'s abuse or neglect was the result of physical abuse to the minor inflicted by one or both parents.[4] In re Arthur H., 212 Ill. 2d at 466 (explaining that the trial court only needs to consider the actions of the parents, to the extent possible). Section 2-21(1) specifically provides that the "finding shall appear in the order of the court." 705 ILCS 405/2-21(1)(West 1996). Accordingly, we hold that after the trial court found that L.W. was abused or neglected, the trial court did not comply with section 2-21(1) of the Act when its adjudication order failed to delineate in writing the factual basis supporting its determination that the abuse or neglect was the result of physical abuse to the minor inflicted by one or both parents. 705 ILCS 405/2-21(1) (West 1996); also see In re Arthur H., 212 Ill. 2d at 466. Therefore, the trial court also failed to comply with the second step of the two-step process.

B. The Proceedings Pursuant to Section 2-21(2) of the Act

Finally, section 2-21(2) of the Act provides that if the court determines and puts in writing

---

[4]The trial court entered the adjudication order on February 25, 1997. The report of proceedings for February 25, 1997, is not included in the record.

the factual basis supporting the determination that the minor is either abused or neglected or dependent, "the court shall then set a time *** for a dispositional hearing." 705 ILCS 405/2-21(2) (West 1996). Section 2-21(2) of the Act makes it clear that a condition precedent to setting L.W.'s case for a dispositional hearing was an order stating the factual basis for the court's finding that L.W. was either abused or neglected, and a factual basis supporting the determination that the abuse or neglect is the result of physical abuse to the minor inflicted by one or both parents. 705 ILCS 405/2-21(2) (West 1996). We hold that because the trial court, in this termination of parental rights case, failed to comply with section 2-21(1) of the Act by stating the factual basis supporting the abuse or neglect determination in its written order, and because the trial court failed to provide Oscar H. with notice of the reasons forming the basis for the abuse or neglect determination (In re Madison H., 215 Ill. 2d 364, 374 (2005)), the termination hearing for Oscar H. should not have taken place. 705 ILCS 405/2-21(2) (West 1996). Consequently, this case must be remanded to the trial court for further proceedings consistent with this opinion. In re M.M., 337 Ill. App. 3d 764, 778 (2003)(The trial court's failure to make the findings mandated by statute makes an order voidable and reviewable, and does not preclude the appellate court's jurisdiction to review the order, but, rather constitutes grounds to reverse it); 705 ILCS 405/2-21(1),(2) (West 1996).

THE MOTION IN LIMINE

In the event another adjudication order is entered and another termination hearing is held on remand, we feel compelled to address an evidentiary ruling made by the trial court and an issue raised by Oscar H. that may arise at a second termination of parental rights hearing. Before the hearing on the termination of parental rights began, the Public Guardian made an oral motion in

limine to exclude evidence of L.W.'s siblings' dispositions. The Public Guardian cited In re M.C. as authority for his position. In re M.C., 201 Ill. App. 3d at 798. Oscar H. argued that evidence of his ability to care for L.W.'s four siblings established his parental fitness and ability to care for L.W. The trial court granted the Public Guardian's oral motion in limine and held that evidence of Oscar H.'s parental fitness and ability to care for L.W.'s four siblings would be excluded because the court "was going to deal specifically with [L.W.]."

First, the State argues that Oscar H. waived this issue. We note that the rule of waiver is an admonition to the parties and not a limitation on the jurisdiction of this court. Illinois State Chamber of Commerce v. Filan, 100197, slip op. at 8 (October 6, 2005); In re W.C., 167 Ill. 2d 307, 323 (1995). "A reviewing court may, in furtherance of its responsibility to provide a just result and to maintain a sound and uniform body of precedent, override considerations of waiver that stem from the adversarial nature of our system." Filan, slip op. at 9; Dillon v. Evanston Hospital, 199 Ill. 2d 483, 504-05 (2002). We, like the court in Filan, believe it appropriate to address the parties' arguments on the merits; accordingly, we decline to find waiver. Filan, slip op. at 9; Central Illinois Light Co. v. Home Insurance Co., 213 Ill. 2d 141, 152 (2004).

Second, the State argues that Oscar H. made no offer of proof at trial with evidence to establish his parental fitness in order to preserve the issue for review. The State cites In re Jaber W., 344 Ill. App. 3d 250, 257 (2003), in support of its position arguing that Oscar H. failed to make an offer of proof as to the excluded evidence, thereby failing to preserve the issue for review. In Jaber W., a teacher made a child abuse hotline report that she suspected that her student was neglected and abused. A DCFS caseworker testified that Jaber stated that his father hit him in the face. On cross-

examination, the trial court in <u>Jaber W.</u> sustained the State's objections to the respondent-mother's questions regarding the DCFS caseworker's use of medication or whether she was presently under any medical care. <u>Jaber W.</u>, 344 Ill. App. 3d at 257. The <u>Jaber</u> court found that the respondent-mother failed to make an offer of proof in order to establish what the testimony would have shown had it been allowed or that the DCFS caseworker's investigation would have been affected if she were on medication or under the care of a physician. <u>Jaber W.</u>, 344 Ill. App. 3d at 257.

<u>Jaber W.</u> is distinguishable from the facts in L.W.'s case (1) because <u>Jaber W.</u> involves testimonial evidence and L.W.'s case involves documentary evidence, and (2) because the trial court knew what documentary evidence was being excluded and what the evidence would have shown had it been allowed. We note that the Public Guardian made a motion <u>in</u> <u>limine</u> specifically to exclude evidence of L.W.'s siblings' dispositions. Black's Law Dictionary defines "disposition" as a final settlement or determination or the court's disposition of the case. Black's Law Dictionary 484 (7th ed. 1999). Section 2-23(1)(a) of the Act, which explains the different kinds of dispositional orders, provides that an order or disposition must be entered to restore a minor to the custody of his parent. 705 ILCS 405/2-23(1)(a) (West 1996); see also 705 ILCS 405/2-28(4) (West 1996). When the Public Guardian referred to L.W.'s siblings' dispositions, according to the Act, the Public Guardian was referring to the dispositions or orders (hereinafter, the disposition orders) entered in L.W.'s siblings' cases. 705 ILCS 405/2-23(1)(a) (West 1996); see also 705 ILCS 405/2-28(4)(West 1996). Moreover, the trial court knew that L.W.'s siblings' disposition orders contained the evidence being excluded because it granted the Public Guardian's motion to exclude the evidence.

We note that the DCFS service plans in the record establish that Oscar H. was awarded

custody of L.W.'s siblings. Additionally, since the Act requires a finding in the order that the parent is fit to care for the minor before restoring custody of the children to the parent (705 ILCS 405/2-23(a)(West 1996); see also 705 ILCS 405/2-28(4)(West 1996)), we know that the evidence in the four disposition orders would have shown that Oscar H. had been found to be a fit parent on four different occasions and was awarded custody of L.W.'s four siblings twice in 1998, in 2000 and in 2001, during the same years (1996-2003) that L.W.'s case was pending in the juvenile court. It is clear that the fitness findings in L.W.'s siblings' disposition orders was the evidence that was excluded and that the fitness findings in the orders would have been used to support Oscar H.'s claim that he was a fit parent. Therefore, since a motion in limine was specifically made to exclude L.W.'s siblings' disposition orders and, since the trial court knew that the fitness findings in L.W.'s siblings' disposition orders was the evidence being excluded and excluded it, no offer of proof was required in this case. Dillon, 199 Ill. 2d at 495 (an offer of proof is unnecessary where the court understands the nature and character of the evidence sought to be introduced).

Next, we must address the standard of review to be used to consider the evidentiary issue in this case. When the trial court granted the Public Guardian's oral motion in limine and excluded the fitness findings in L.W.'s siblings' disposition orders which would support Oscar H.'s claim of parental fitness, the trial court made an evidentiary ruling. A motion in limine is a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury. People v. Williams, 188 Ill. 2d 365, 368 (1999). Generally, evidentiary motions, such as motions in limine, are addressed to the trial court's inherent power to admit or exclude evidence, and

reviewing courts will not disturb a trial court's evidentiary ruling absent an abuse of discretion. People v. Williams, 188 Ill. 2d at 369, citing People v. Holman, 257 Ill. App. 3d 1031, 1033 (1994), People v. Jordan, 205 Ill. App. 3d 116 , 121 (1990), People v. Escobar, 168 Ill. App. 3d 30, 43 (1988), and People v. Williams, 60 Ill. App. 3d 529, 532-33 (1978); see also People v. Harvey, 211 Ill. 2d 368, 392 (2004).  However, a trial court must exercise its discretion within the bounds of the law.  People v. Moore, 207 Ill. 2d 68, 75 (2003);  Williams, 188 Ill. 2d at 369. Where the question presented is one of law, a reviewing court determines it independently of the trial court's judgment. Moore, 207 Ill. 2d at 75; Williams, 188 Ill. 2d at 369, quoting In re Lawrence M., 172 Ill. 2d 523, 526 (1996).  In this case, whether the prior disposition orders finding Oscar H. fit and  awarding him custody of L.W.'s siblings were admissible to determine his parental fitness to care for L.W. is a question of law; therefore, our review is de novo.  Moore, 207 Ill. 2d at 75; Williams, 188 Ill. 2d at 369.

We must determine whether the fitness findings in L.W.'s siblings' disposition orders  (Oscar H. was found fit and awarded custody of L.W.'s four siblings) were admissible in evidence and could be used to establish Oscar H.'s fitness as a parent and ability to care for L.W.  Illinois courts have held that the rules of  evidence that apply in civil cases also apply to parental rights termination proceedings. In re J.B., 346 Ill. App. 3d 77, 81 (2004). A basic principle of the law of evidence is that what is relevant is admissible.  People v. Monroe, 66 Ill. 2d 317, 321 (1977).  The Illinois Supreme Court has adopted Rule 401 of the Federal Rules of Evidence, which defines relevant evidence as evidence having a tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

1-03-2835

People v. Boclair, 129 Ill. 2d 458, 477 (1989); Monroe, 66 Ill. 2d at 322, quoting Fed. R. Evid. 401.

Evidence is probative when it tends to prove or disprove a matter at issue. People v. Nichols, 27 Ill.

App. 3d 372, 386 (1975). The fact to be proved in this case is Oscar H.'s parental fitness and ability

to care for L.W.

The trial court predicated its decision to exclude evidence concerning the disposition orders entered in L.W.'s siblings cases on In re M.C. 201 Ill. App. 3d at 798. The pertinent facts in In re M.C. are as follows (1) at M.C.'s mother's termination hearing, the mother testified that her 10-month-old daughter was living with her and (2) the trial court sustained the State's objection to defense counsel's question that M.C.'s mother's 10- month-old daughter was living with her under a protective order. In re M.C. 201 Ill. App. 3d at 796. The In re M.C. court held that the trial court properly sustained the objection and excluded the evidence regarding further questions about the 10-month-old child because testimony regarding the mother's ability to care for another child was irrelevant to the issue of her fitness to act as a parent for M.C. In re M.C. 201 Ill. App. 3d at 798.

We elect not to follow In re M.C. because the fitness evidence that Oscar H. intends to proffer is relevant since it can be used to prove the fact at issue in this case: whether Oscar H. is a fit parent. Relevant evidence includes the findings in the juvenile court's orders that Oscar H. was fit to parent L.W.'s four siblings. When all relevant evidence of Oscar H.'s fitness is not considered, the court abandons the goal and purpose of the Act, which is to keep the family together. 705 ILCS 405/1-2(1) (West 1996). We hold that the trial court erred when it failed to consider fitness evidence that was relevant and would assist the court in determining Oscar H.'s fitness to parent L.W.

In addition, we note that one of the purposes of the Act is to preserve and strengthen the

child's family ties whenever possible. 705 ILCS 405/1-2(1) (West 1996). We also note that when a court sets permanency goals, the court is required by the Act to include as a factor in its determination the status of the child's siblings. 705 ILCS 405/2-28 (West 1996). Finally, we note that section 1-5(1) of the Act provides that parents "who are parties respondent have the right *** to present evidence material to the proceedings." 705 ILCS 405/1-5(1) (West 1996). In light of the preceding, we hold that evidence that Oscar H. has been found fit and given custody of four of L.W.'s siblings is material and relevant and is one factor that should be considered by a court making a determination on the issue of Oscar H.'s parental fitness and ability to parent and care for L.W., the child who is the subject of these proceedings.

In conclusion, in light of our decision, it is unnecessary to address the other issues presented by the parties. While it is unnecessary for this court to address the constitutional issue raised in Oscar H.'s brief in order to make a decision in this case (Trent v. Winningham, 172 Ill. 2d 420, 425 (1996)), if that issue arises in the trial court on remand, we direct the trial court to consider the constitutional issue in light of In re D.W., 214 Ill. 2d 289 (2005).

Based upon the foregoing, we reverse the trial court's order finding Oscar H. unfit and terminating Oscar H.'s parental rights, and we remand this case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded with directions.

O'BRIEN, J., and GALLAGHER, J., concur.