2022 IL App (4th) 220146-U

NOS. 4-22-0146, 4-22-0147, 4-22-0148, 4-22-0149, 4-22-0150 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MYS.G., A.G., MYL.G., V.G., and D.G., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | Nos.  20JA42 |
| v. | ) | 20JA43 |
| Anthony G., | ) | 20JA44 |
| Respondent-Appellant). | ) | 20JA45 |
| | ) | 20JA46 |
| | ) | |
| | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, holding that (1) respondent forfeited his claim that the trial court erred in taking judicial notice of certain documents at the termination hearing and (2) the trial court's finding that respondent was unfit based on his failure to make reasonable progress was not against the manifest weight of the evidence.

¶ 2        The State filed petitions for adjudication of wardship concerning five minor siblings: Mys.G. (born July 9, 2011), A.G. (born October 12, 2012), Myl.G. (born August 16, 2014), V.G. (March 10, 2017), and D.G. (born July 12, 2018). The minors were adjudicated neglected. Thereafter, the State filed a petition to terminate the parental rights of the minors'

parents, Victoria G. and Anthony G. The trial court found Victoria G. and Anthony G. to be unfit and further found that it was in the minors' best interests to terminate their parental rights.

¶ 3        Respondent Anthony G. appeals, arguing the trial court erred in (1) taking judicial notice of "the entire court file" at the termination hearing and (2) finding him unfit based on his failure to make reasonable progress. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        On May 14, 2020, the State filed petitions for adjudication of wardship alleging that minors Mys.G., A.G., Myl.G., V.G., and D.G. had been abused and/or neglected by their parents, Anthony G. and Victoria G. Victoria G. is not a party to the present appeal. The petitions alleged that two days earlier, Anthony G. was in a single-vehicle accident with his five children and they were subsequently found walking on an interstate highway. Anthony G. was found wearing only his underwear, was in an "altered mental state," and exhibited delusional thinking. A shelter care hearing was held that day, and the court placed the minors in the temporary custody of the Department of Children and Family Services (DCFS).

¶ 6        On February 3, 2021, an adjudicatory hearing was held, and the court found the minors were neglected in that they were in an injurious environment. On March 12, 2021, the trial court entered a dispositional order making the minors wards of the court, finding Anthony G. unfit to care for the minors, and finding Victoria G. unfit and unwilling to care for the minors. The court ordered that DCFS would have custody and guardianship of the minors and found the appropriate permanency goal was return home within 12 months.

¶ 7        On November 15, 2021, the State filed a motion to terminate the parental rights of Anthony G. and Victoria G. to all five minors. The petition alleged that Anthony G. was an unfit parent because he (1) failed to make reasonable progress toward the return home of the minors

within any nine-month period after an adjudication of neglect and (2) was unable to discharge his parental responsibilities. The nine-month period at issue was from February 3, 2021, through November 3, 2021.

¶ 8        On January 27, 2022, the trial court held a hearing on the State's motion for termination of parental rights. The State requested that the court take judicial notice of all court orders filed in the minors' cases as well as "all court reports written for these cases and filed with the court, including the Dispositional Report, dated March 12th, 2021; the Permanency Reports dated June 10th; September 9th; October 21, 2021, as well as the Psychological Report on [Anthony G.] by Dr. Terri Guilford, that was submitted with the June 10th, 2021 Court Report." The court stated that it would take judicial notice of these items. No party voiced an objection.

¶ 9        Chris Powell, a child welfare specialist, testified as a witness for the State. Powell was assigned to the case in January 2021. A service plan was already in place at that time. In October 2021, Powell prepared a new service plan, which contained an evaluation of Anthony G.'s progress for the prior six months. Powell stated that the service plan that had been in place required Anthony G. to complete a parenting class and apply what he learned in the class during his visits with his children. Anthony G. attended the sessions but did not make sufficient progress to successfully pass the class.

¶ 10        The October 2021 service plan, which was later admitted into evidence, stated that the final evaluation report from the parenting class indicated Anthony G. was "below passing" in the areas of accountability, communication, self-disclosure, and attentiveness. The evaluator stated that Anthony G. did not take responsibility for his children being in care, failed to pay attention in class, and struggled to understand the material. Anthony G. agreed to work

with a parenting coach after he failed to pass the parenting class, but he did not attend three out of four scheduled meetings with the parenting coach.

¶ 11    Powell testified that Anthony G. had visitation with the children once a week for two hours. His visits were suspended in 2021 from the end of May through the beginning of August due to missed visits and testing positive for methamphetamine.

¶ 12    Powell also testified that Anthony G. had been diagnosed with bipolar disorder and was required under the service plan to see a mental health counselor, a psychiatrist, and a community support worker. Anthony G. participated in counseling during the nine-month period in question, and he cooperated periodically with community support services. Powell explained that the purpose of the community support services was to help Anthony G. maintain structure and stay organized. Anthony G. "typically" met with his psychiatrist, but he did not always want to take the prescribed medications.

¶ 13    The October 2021 service plan stated that, in July 2021, Anthony G. refused to take his medication and displayed anger and paranoia. He missed appointments for mental health treatment during July and August of 2021 but became more compliant with his medications and treatment in September 2021.

¶ 14    Powell testified that in May 2021, he asked Anthony G. to undergo a psychological evaluation to get a better understanding of his mental health and his overall capacity to function. Powell spoke with Anthony G.'s mental health counselor, and she reported having concerns that he was not taking his prescribed medications and was having difficulty accepting his diagnosis. Dr. Terri Guilford performed a psychological evaluation, and her report was filed with the trial court in June 2021. In the report, Dr. Guilford noted the importance of Anthony G. complying with mental health treatment.

¶ 15　　　　Powell testified that, based on his observations, Anthony G.'s mental health was "frequently up and down and erratic at times." There were periods when Anthony G. would be very agitated and paranoid. During these periods, he exhibited delusional thinking, sometimes reporting he believed people were hacking his phone, entering his house, and stealing his mail. It was difficult to have constructive conversations when Anthony G. was exhibiting these symptoms.

¶ 16　　　　Powell testified that, overall, Anthony G. had made unsatisfactory progress toward the mental health requirements under the service plan. Between January 2021 and November 2021, there were inconsistencies and "ups and downs" regarding Anthony G.'s compliance with the mental health services.

¶ 17　　　　The service plan also required Anthony G. to show stability in housing and employment. For the majority of the nine-month period in question, Anthony G. lived in a mobile home that had frequent problems with a lack of heat, frozen pipes, no water during the winter, and a hole in the bathroom floor. Anthony G. allowed trash to accumulate at times. Anthony G. was able to move into a one-bedroom apartment through the local public housing authority. Powell testified he knew the public housing authority worked with families with children but there were often long waitlists to get into a larger apartment. During Powell's last home visit, Anthony G. indicated that he had a friend living with him. Powell did a background check on the friend, which revealed that he had a methamphetamine conviction. This concerned Powell given Anthony G.'s history of substance abuse.

¶ 18　　　　Powell testified that the service plan required Anthony G. to undergo a substance abuse assessment and complete any recommended services. Anthony G. completed the assessment, but he did not complete the recommended services. Anthony G. was also required to

submit to random drug screening. His compliance with the drug screening was inconsistent, and he had two drug tests that were positive for methamphetamine. The October 2021 service plan stated that Anthony G. was noncompliant with his required substance abuse treatment in July and August of 2021. He became more compliant starting in late August 2021, but he continued to miss appointments.

¶ 19        Powell stated that, from February 2021 through November 2021, Anthony G. was unable to correct any of the conditions that led to the children being removed such that the children would be able to return home. The trial court admitted into evidence the October 2021 service plan, which indicated that Anthony G. had made unsatisfactory progress toward all of the desired outcomes listed in the plan.

¶ 20        The trial court found Anthony G. and Victoria G. to be unfit. Regarding Anthony G., the court stated that the State had proven by clear and convincing evidence the allegations that Anthony G. was unfit due to his inability to discharge parental responsibilities and his failure to make reasonable progress toward the return of the minors during the relevant time period. The court found that Anthony made "some efforts" under the service plan but noted that "efforts do not always translate into progress." The court found that "there never really was any progress made by the father toward any type of return home goal of the minors." The court also noted that Anthony G. had put forth inconsistent efforts "during that time period" and that his mental health and substance abuse issues continued to interfere with his efforts.

¶ 21        The trial court subsequently found the State had proven by a preponderance of the evidence that it was in the best interest of the minors to terminate Anthony G.'s parental rights. This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, Anthony G. argues the trial court erred in (1) taking judicial notice of "the entire court file" at the termination hearing and (2) finding him unfit based on his failure to make reasonable progress.

¶ 24                              A. Judicial Notice

¶ 25    Anthony G. first argues that, at the termination hearing, the trial court erred in taking judicial notice of "the entire court file without regard to identifying specific portions of the file that would be relevant or admissible." He contends the rules of evidence applied to the unfitness portion of the termination hearing and, accordingly, the court could not consider evidence elicited at earlier hearings where the rules of evidence did not apply. He argues that none of the documents of which the State asked the court to take judicial notice were admissible because they were prepared in anticipation of a permanency or dispositional hearing where the rules of evidence did not apply.

¶ 26    However, "[i]t is well established that an appellant's failure to raise an issue in the circuit court results in [forfeiture] of that issue." *In re Shauntae P.*, 2012 IL App (1st) 112280, ¶ 93. We find that Anthony G. has forfeited this argument on appeal because he failed to object to the court taking judicial notice of the documents at issue during the termination hearing. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 50; *In re Jaber W.*, 344 Ill. App. 3d 250, 256 (2003). *In re A.T.*, 197 Ill. App. 3d 821, 834 (1990).

¶ 27              B. Unfitness Based on Failure to Make Reasonable Progress

¶ 28    Anthony G. next argues that the trial court erred in finding him unfit based on his failure to make reasonable progress toward the return of the children during any nine-month period following the adjudication of neglect.

¶ 29        Pursuant to section 2-29(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2-29 (West 2020)), the trial court may not involuntarily terminate parental rights unless it finds, by clear and convincing evidence, that the minor's parent is an "unfit person" as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). One of the bases upon which a parent may be determined unfit is the parent's failure "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987." 750 ILCS 50/1(D)(m)(ii) (West 2020). If a service plan is in place to correct the conditions that were the basis of the child's removal from the parent and if those services were available, then " 'failure to make reasonable progress toward the return of the child to the parent' includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication." *Id.*

¶ 30        Our supreme court has held that:

"[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

This court has defined "reasonable progress" as follows:

" ' "Reasonable progress" is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child.' " (Emphases in original.) *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 51 (quoting *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991)).

¶ 31 Generally, "a trial court's finding that a parent is unfit under section 1(D) of the Adoption Act will not be reversed on appeal unless that finding is against the manifest weight of the evidence." *In re N.G.*, 2018 IL 121939, ¶ 29. "A trial court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." *Id.*

¶ 32 Here, we find the trial court's finding of unfitness was not against the manifest weight of the evidence. Powell testified that Anthony G.'s compliance with the mental health treatment requirements in the service plan was inconsistent and that his mental health was "frequently up and down and erratic at times." Anthony G. did not always take his prescribed medication, and there were periods when he exhibited delusional thinking and was agitated and paranoid. He was not compliant with substance abuse treatment from June 2021 through late August 2021. He tested positive for methamphetamine twice during the nine-month period and

missed some of his random drug tests. Although Anthony G. became more compliant with substance abuse treatment in late August 2021, he still missed some appointments.

¶ 33       In addition, while Anthony G. participated in a parenting class, he did not satisfactorily complete it. The final evaluation for the parenting class indicated that Anthony G. had failed to adequately learn the material and that he had issues with inattentiveness. His residence for much of the nine-month period was a mobile home which lacked a reliable heat source leading to freezing pipes and a lack of running water in the winter. It also had a hole in the bathroom floor. Although Anthony G. moved during the period in question, his apartment was too small to accommodate his five children, and a friend with a drug conviction was living with him. Powell testified that, during the nine-month period in question, Anthony G. was not able to correct any of the conditions that led to the children being removed to the extent the children would have been able to return home.

¶ 34       Given this evidence, the trial court could have reasonably concluded Anthony G.'s progress was not sufficiently demonstrable or of such a quality that the court would be able to return the children to his custody in the near future. See *Ta. T.*, 2021 IL App (4th) 200658, ¶ 51. Accordingly, the trial court's finding that Anthony G. had not made reasonable progress toward the return of his children during the nine-month period from February 3, 2021, through November 3, 2021, was not against the manifest weight of the evidence.

¶ 35                              III. CONCLUSION

¶ 36       For the reasons stated, we affirm the trial court's judgment.

¶ 37       Affirmed.